IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CCM ASSOCIATES II LLC,<br><br>            Plaintiff,<br><br>            v.<br><br>CHANNEL CONTROL MERCHANTS LLC; KKR & CO, INC., HCD HOLDINGS II, LLC, ROBERT M. LYNCH, BRIAN LINDQUIST, SCOTT STANKIEWICZ, WILLIAM L. CORNOG, NANCY M. FORD, ANGAD SINGH, WILLIAM S. SIMON, JONNIE DOBBS, MARY WALTER, KATIE BYLAK, STEVEN WISCH, and ROBERT ROBERTS,<br><br>            Defendants. | C.A. No. _____ |

## COMPLAINT

Plaintiff, CCM Associates II LLC ("CCM Associates" or "Plaintiff"), by and through its undersigned counsel, hereby submits this Complaint and alleges as follows:

## PRELIMINARY STATEMENT

1. This litigation arises out of a deliberate plan by a self-interested, high-level executive – the chief executive officer, Robert M. Lynch ("Lynch"), to falsify corporate financial records and lie about the financial performance of Channel Control Merchants LLC ("Channel Control Merchants" or the "Company").

2. Throughout Lynch's tenure as chief executive officer, Lynch engaged in a series of reckless mistakes which undeniably led to a series of unfortunate losses on the Company's books. Instead of accepting his mistakes and the Company's resulting losses, Lynch directed the Company's chief financial officer – Katie Bylak ("Bylak") – and his two other cohorts – Brian Lindquist ("Lindquist") and Scott Stankiewicz ("Stankiewicz") – to fabricate the Company's

financials in an effort to actively conceal the Company's true financial performance and condition and Lynch's gross mismanagement.

3.  Lynch, Bylak, Lindquist and Stankiewicz did not act alone. The fraud perpetrated by Lynch, Bylak, Lindquist and Stankiewicz was known by HDC Holdings LLC ("HDC") – the parent company of Channel Control Merchants – and KKR & Co., Inc. ("KKR"), the private equity firm that was the controlling member of HDC. Nonetheless, HDC and its Board of Managers, and KKR did nothing to stop Lynch, Bylak, Lindquist and Stankiewicz from furthering their fraudulent conduct. To the contrary, HDC, its Board of Managers, and KKR assisted, approved, and actively concealed the fraudulent acts engaged in by Lynch, Bylak, Lindquist and Stankiewicz.

4.  Indeed, since issuance of the Company's fraudulent financials, Plaintiff repeatedly brought and raised its concerns and submitted proof of the fraud to HDC and KKR. Nonetheless, both HDC and KKR failed to take any action to remedy the fraud and instead lied about the completion of an investigation into the fraud, and further concealed the Company's true financial performance and condition.

## **THE PARTIES**

5.  Plaintiff CCM Associates is a limited liability company organized under the laws of the State of Mississippi. At all times relevant to the alleged misconduct herein, Plaintiff was the owner of 1,520,198 Class A Shares in Defendant HDC.[1]

6.  Defendant Channel Control Merchants is a limited liability company organized under the laws of Delaware with its principal place of business in Hattiesburg, Mississippi.

---

[1] Since the fraudulent conduct alleged herein, HDC has undergone two separate transactions that have, upon information and belief, either diluted or eliminated Plaintiff's interests in HDC. Although Plaintiff has requested information from HDC reflecting and relating to these transactions, to date, all of Plaintiff's efforts have been denied.

7. Defendant HDC is a limited liability company organized under the laws of the State of Delaware. At all times relevant hereto, HDC was the parent company of Channel Control Merchants.

8. Defendant KKR & Co., Inc. ("KKR") is a publicly traded corporation organized and incorporated under the laws of the State of Delaware, and maintains its principal place of business in New York. KKR's registered agent is Maples Fiduciary Services (Delaware) Inc., 4001 Kennett Pike, Suite 302, Wilmington, DE 19807. At all times relevant hereto, KKR was a controlling member of HDC.

9. Defendant Lynch is an individual who at all times relevant to this dispute was a resident of the State of Utah. At all times relevant to this action, Lynch was the president, chief executive officer of Channel Control and a member of the Board of Managers of HDC (the "Board", and each member of the Board, a "Manager"). .

10. Defendant Bylak is an individual who at all times relevant to this dispute was a resident of the State of Michigan. At all times relevant to this action, Bylak was the chief financial officer of Channel Control Merchants.

11. Defendant Lindquist is an individual who at all times relevant to this dispute was a resident of the State of Florida. At all times relevant to this dispute, Lindquist was the chief transformation officer of Channel Control Merchants.

12. Defendant Stankiewicz is an individual who at all times relevant to this dispute was a resident of the State of Florida. At all times relevant to this dispute, Stankiewicz was the vice president of strategy of Channel Control Merchants.

13. Defendant William L. Cornog ("Cornog") is an individual who at all times relevant to this dispute was a resident of the State of Texas. Cornog is or was a Manager of HDC.

14. Defendant Nancy M. Ford ("Ford") is an individual who at all times relevant to this dispute was a resident of California. Ford is or was a Manager of HDC.

15. Defendant Angad Singh ("Singh") is an individual who at all times relevant to this dispute was a resident of California. Singh is or was a Manager of HDC.

16. Defendant William S. Simon ("Simon") is an individual who at all times relevant to this dispute was a resident of Florida. Simon is or was a Manager of HDC.

17. Defendant Jonnie Dobbs ("Dobbs") is an individual who at all times relevant to this dispute was a resident of Texas. Dobbs is or was a Manager of HDC.

18. Defendant Mary Walter ("Walter") is an individual who at all times relevant to this dispute was a resident of California. Walter is or was a Manager of HDC.

19. Defendant Steven Wisch ("Wisch") is an individual who at all times relevant to this dispute was a resident of New York. Wisch is or was a Manager of HDC.

20. Defendant Robert Roberts ("Roberts") is an individual who at all times relevant to this dispute was a resident of Canada. Roberts is or was a Manager of HDC.

21. Cornog, Ford, Singh, Simon, Dobbs, Walter, Wisch, and Roberts are herein collectively referred to as the "Manager Defendants." Lynch, Bylak, Lindquist, Stankiewicz, and the Manager Defendants are collectively referred to as the "Individual Defendants." The Individual Defendants, Channel Control Merchants, HDC and KKR are collectively referred to as the "Defendants."

## JURISDICTION AND VENUE

22. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is diversity of citizenship between Plaintiff and Defendants, and the amount in controversy in this action, exclusive of interest and costs, exceeds $75,000.00.

23. Venue exists in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district and because the Defendants are subject to personal jurisdiction in this district. Specifically, the Court has personal jurisdiction over Channel Control Merchants, HDC and KKR because each of these defendants are entities organized under the laws of Delaware. The Court further has personal jurisdiction over Individual Defendants because each served as a managing member of HDC or as an officer Channel Control Merchants.

## COMMON ALLEGATIONS OF FACT

24. Channel Control Merchants is an extreme value retailer focusing on purchasing customer returns, insurance salvage and closeouts throughout the southern United States and across Canada, and operates stores under the names Dirt Cheap, Dirt Cheap Building Supplies, and Treasure Hunt.

25. On or around June 5, 2015, Channel Control Merchants was purchased by KKR for approximately $258 million (the "Acquisition"). Through the Acquisition, KKR established HDC to be a holding company, and transferred ownership of Channel Control Merchants to HDC. Following the Acquisition, and at all times relevant to this dispute, HDC owned 100% of the interests of Channel Control Merchants.

26. In connection with the Acquisition, CCM Associates acquired Class A Shares of HDC for $5.00 per Class A Share. At all times relevant to this dispute, CCM Associates held 1,520,198 Class A Shares in HDC. This interest constituted approximately 2.946% of HDC.

27. Between 2015 and 2017, Channel Control Merchants operated successfully, posting average annual profits in the amount of $7.5 million.

### KKR Appoints Lynch as Chief Executive Officer of Channel Control Merchants

28. Roberts, a former co-owner of Channel Control Merchants, served as Channel Control Merchant's chief executive officer until his resignation in June 2018. Following his resignation as chief executive officer, Roberts continued to serve on HDC's Board.

29. The Board hired Izganics to replace Roberts as the Company's chief executive officer, even after receiving advice from many who interviewed Izganics that he was not a good candidate for the job due to his lack of experience in the extreme value retail sector.

30. Izganics' tenure as chief executive officer was woefully unsuccessful. Within six (6) months of Izganics' hiring, Channel Control Merchants suffered a $14.7 million loss. On or around February 15, 2019, Izganics' resigned as chief executive officer of the Company.

31. On or around February 22, 2019, the Company hired Lynch, who was already serving as a Manager of HDC, as the interim chief executive officer of Channel Control Merchants. Shortly thereafter, Lynch assumed the role of chief executive officer on a full-time basis.

32. Unfortunately, Lynch's tenure as chief executive officer of the Company did not lead to any significant improvements for the already-deteriorating Company. Rather, as detailed further below, Lynch's tenure as chief executive officer was full of reckless mismanagement of the Company and fraudulent financial reporting intended to conceal his mismanagement.

**Lynch's Total Mismanagement of the Company**

33. During Lynch's role as chief executive officer of the Company, he simultaneously ran his own consulting firm. In order to exercise influence and control over other members of the Company's leadership team, Lynch hired individuals from his own consulting firm to also work for the Company. Specifically, after being named chief executive officer, Lynch hired Bylak as Channel Control Merchant's chief financial officer, Lindquist as Channel Control Merchants' chief transformation officer, and Stankiewicz as Channel Control Merchants' vice president of strategy.

34. Thereafter, Lynch relied upon the support he received from Bylak, Lindquist and Stankiewicz to repeatedly divide the Company's leadership team – Lynch, Bylak, Lindquist and Stankiewicz on one side, and the remaining members of the Company's leadership team on the other side.

35. Lynch's operation of Channel Control Merchants was characterized by gross negligence.

36. In the extreme value retail industry, the relationships the Company has with its vendors are highly valuable because only a finite amount of merchandise is available. Lynch foolishly downplayed the importance of such relationships in Channel Control Merchants' business, and repeatedly engaged in conduct that was detrimental to the Company's relationships with its vendors. As a result of Lynch's conduct, several of the Company's relationships with vendors were severely damaged or completely destroyed.

37. Lynch further engaged in other reckless conduct that was harmful to the Company. In 2019, Lynch directed the Company to purchase loads of merchandise returned by customers to Home Depot ("Home Depot Customer Returns"). In December 2019, Lynch was

informed that these purchases caused the Company to sustain significant losses and that expenses for the purchases were 56% of the value of an average load and the profit margin amounted to only approximately 20%. Despite being informed that his earlier purchase of the Home Depot Customer Returns did not benefit the Company (but rather harmed it), Lynch ignored the data and purchased even greater quantities of Home Depot Customer Returns to the detriment of the Company.

38. Another example of Lynch's reckless conduct on behalf of the Company was his unfounded decision for the Company to stop paying rent that was due and owing on many of its properties throughout the COVID-19 pandemic in 2020. Lynch and Bylak further directed the Company's buyers to inform vendors that payment for merchandise purchased would be paid on 120-day terms, regardless of any prior payment arrangements.

39. Also, throughout the COVID-19 pandemic, Lynch caused the Company to recklessly purchase essential items from grocery stores and other regular vendors. Such essential items were then sold at a loss in the Company's stores and led to significant operating losses on behalf of the Company.

### Lynch, Bylak, Lindquist and Stankiewicz Fabricate the Company's Financials to Disguise Lynch's Reckless Mismanagement

40. To little surprise at all, Lynch's poor decision making and reckless mismanagement led the Company further into financial trouble. Lynch, with the assistance of Bylak, Lindquist and Stankiewicz, were determined to conceal the Company's poor financial performance and to do so, Lynch, Bylak, Stankiewicz and Lindquist (and potentially other officers and employees the Company) caused to be prepared and/or authorized financial statements that misrepresented the value of the Company's inventory.

41. On December 13, 2019, DeRogatis, the then chief merchandising officer for Channel Control Merchants at that time, inquired with Lynch and Stankiewicz as to the significant increase in the reported margins for the Home Depot account that were reflected on the Company's financials. As DeRogatis indicated to Lynch and Stankiewicz, such an increase in the margins were surprising because the Company had continued to sell the product the same way and purchased the inventory from Home Depot at the same price as the prior years when much lower margins were reported.

42. On the same day, Lynch remarkably admitted to DeRogatis in his email response, that the Company's actual margins were likely less that the margins reflected on the Company's financials, but that he was personally "nurturing" the Home Depot account back to profitability. Notably, Lynch copied Channel Control Merchants' entire leadership team, the Board, and all KKR staff involved with Channel Control Merchants at the time; however, none of those individuals reacted or responded to Lynch's admission of manipulating the Company's financials.

43. A few months later, in April 2020, the Company released its final financial statements for the year ending on December 31, 2019 (the "2019 Financials"). The 2019 Financials reflect an inventory for Home Depot with a sales-floor value of $1,350,324.23 and a margin of 37.62% on the Home Depot account.

44. Plaintiff has since discovered that stated value of $8.86 price per piece in the Company's Financials was the *sale price value* for the inventory – not the *actual price value* based on the value for which the Company acquired the inventory. Specifically, to "nurture" the Home Depot account in the Company's 2019 Financials, Lynch directed that the $8.86 value be multiplied by 152,440 which is the number of Home Depot items counted during the year-end

9

sales floor inventory count for fiscal year 2019. Under generally accepted accounting principles ("GAAP"), this is not the correct way (or an appropriate way) to calculate the Company's margins.

45. Rather, the *actual price per piece* for Home Depot inventory – using GAAP compliant means of accounting for inventory – was $4.74. Further, because the Company initially discounts all items at 40% of the regular retail price and proceeds to increase discounts week-by-week until capped at a 90% discount, the actual price per piece was approximately $2.25 – nearly a quarter of the reported $8.86 per-piece value for this inventory.

46. Lynch, Bylak, Stankiewicz and Lindquist purposefully used the *sale price value* to fabricate the Company's 2019 Financials and mislead anyone reviewing or relying upon them.

47. The overstatement of Channel Control Merchants' inventory valuation damaged the company by, *inter alia*, exposing it to an unduly high tax liability.

48. A member of CCM Associates brought the misstated inventory to the attention of Channel Control Merchants LLC's board of directors. No corrective action was taken.

49. Indeed, on or around June 15, 2020, Angad Singh ("Singh"), director on the consumer industry team for KKR's private equity platform and a Manager of HDC, acknowledged the incorrect price-per-piece valuation within the Company's 2019 Financials and recognized that the correct inventory valuation was $2.25 per piece on the Home Depot account.

50. Despite knowledge of Lynch's, Bylak's, Lindquist's, and Stankiewicz's misrepresentations of the Company's finances regarding margins on the Home Depot account, and Lynch's admission to such, the Company, HDC, and/or KKR took no action whatsoever to corrective action to remedy the Company's inaccurate financials or address the fraudulent conduct of Lynch, Bylak, Lindquist, and Stankiewicz

51.     Lynch, Bylak, Lindquist and Stankiewicz further fraudulently overstated the inventory for the Company's account with Target in the 2019 Financials. Specifically, the 2019 Financials valued the Company's store sales inventory of items acquired from Target at $15,005,062.95. This is a gross overstatement that cannot be consistent with GAAP.

52.     Based on a cost per pallet of $360.00, the 2019 Financials indicate that the Company had 41,681 pallets of Target material across its 107 Dirt Cheap Stores. This reported information cannot be accurate because the volume of inventory described in the 2019 Financials far exceeds the physical space limitations within Dirt Cheap's 107 locations. In other words, the statements in the 2019 Financials concerning inventory acquired from Target present a physical impossibility.

53.     Between 2018 and 2019, the Company purchased less inventory from Target in 2019 compared to 2018 but yet had an increase in sales of $39 million which is the equivalent of a 25% increase in sales. This 25% increase in sales was done without any change in merchandising, no increase in inventory purchases and no decrease in inventory at year end which is physically impossible.

54.     The falsification of the Company's activities within its 2019 Financials has been repeatedly brought to the attention of the Company, HDC and the Board, and KKR. Despite having been placed on notice of these false representations and having had purportedly investigated Plaintiff's concerns, Defendants have denied Plaintiff to access to any investigation reports, and have taken no action to correct the Company's financials or to address the fraudulent misrepresentations made by Lynch, Bylak, Lindquist and Stankiewicz.

55. The actions of Defendants have caused particular damage to CCM Associates, given, inter alia, its unfavorable position in the debt transactions entered into by Channel Control Merchants.

## COUNT I
(Fraud Against Lynch, Bylak, Lindquist, Stankiewicz and Channel Control Merchants)

56. Plaintiff repeats and re-alleges each of the allegations as set forth above as if fully set forth herein.

57. Lynch, Bylak, Lindquist and Stankiewicz (individually and on behalf of Channel Control Merchants) have made intentionally false and material misleading statements through the Company's 2019 Financials by (i) overstating the Company's year-end inventory for Home Depot purchase and stating a sales floor value of $1,350,324.23 and a $8.86 per unit; and (ii) overstating the Company's value of its store sales floor inventory of items acquired from Target at $15,005,062.95, a figure that is physically impossible when considering the cost per pallet, and the space available through the Company's stores.

58. At the time Lynch, Bylak, Lindquist and Stankiewicz made such false representations, Lynch, Bylak, Lindquist and Stankiewicz (individually and on behalf of Channel Control Merchants) knew that such representations were false or demonstrated a reckless indifference for the truth.

59. Lynch, Bylak, Lindquist and Stankiewicz (individually and on behalf of Channel Control Merchants) made such false representations with the intent to conceal Lynch's reckless management of the Company.

60. The false representations of Lynch, Bylak, Lindquist and Stankiewicz contained in the 2019 Financials were justifiably relied upon by the Company and Plaintiff to form the

basis of its business dealings and to calculate its tax payments due and owing to the Internal Revenue Service.

61. As a result of the false representations of Lynch, Bylak, Lindquist and Stankiewicz, Plaintiff has been suffered damages in an amount to be proved at trial.

**COUNT II**
(Aiding and Abetting Fraud Against the
Manager Defendants, Channel Control Merchants, HDC, and KKR)

62. Plaintiff repeats and re-alleges each of the allegations as set forth above as if fully set forth herein.

63. As set forth above, Lynch, Bylak, Lindquist and Stankiewicz knowingly and intentionally misrepresented the Company's 2019 Financials in order to conceal Lynch's gross mismanagement of the Company and the Company's resulting poor financial performance.

64. Defendants Channel Control Merchants, HDC, KKR, and the Manager Defendants were aware of or should have been aware of the fraud committed by Lynch, Bylak, Lindquist and Stankiewicz. Specifically, Plaintiff raised its concerns regarding the fraud on numerous occasions.

65. Despite knowing that the 2019 Financials included false and misleading representations, Channel Control Merchants, HDC, KKR, and the Manager Defendants knowingly and intentionally authorized or actively and substantially assisted Lynch, Bylak, Lindquist and Stankiewicz to make false and misleading representations and to fraudulently conceal material information, thereby providing substantial assistance in furtherance of the fraud.

66. The false representations of Lynch, Bylak, Lindquist and Stankiewicz contained in the 2019 Financials were justifiably relied upon by the Company and Plaintiff to form the

basis of its business dealings and to calculate its tax payments due and owing to the Internal Revenue Service.

67. As a result of Channel Control Merchants, HDC, KKR, and the Manager Defendants' aiding and abetting of and/or concealment of the fraudulent representations of Lynch, Bylak, Lindquist and Stankiewicz contained in the 2019 Financials, Plaintiff has been suffered damages in an amount to be proved at trial.

## COUNT III
(Gross Negligence Against All Defendants)

68. Plaintiff repeats and re-alleges each of the allegations as set forth above as if fully set forth herein.

69. Plaintiff brings this claim for relief against each Defendant.

70. Plaintiff placed their confidence and trust in the Individual Defendants as Managers of HDC or as officers Channel Control Merchant, HDC as the parent company of Channel Control Merchants, and KKR as the controlling member of HDC, and as such Defendants became and at all relevant times, were fiduciaries of Plaintiff. Defendants, as fiduciaries undertook to act in good faith and in the best interests of Plaintiff and the Company, and to not act with dishonesty, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct with Channel Control Merchants.

71. Defendants breached their duties of care to Plaintiff by, including but not limited to:

(i) Engaging in reckless management of the Company;

(ii) Issuing the Company's 2019 Financials that included intentional and false representations concerning the financial well-being and performance of the Company;

(iii) Authorizing other Company representatives to prepare the 2019 Financials that contained false and improperly overstated inventory calculations;

(iv) Failing to take any action against the individuals who prepared the 2019 Financials or to correct or remedy the 2019 Financials; and

(v) Failing to perform a good faith investigation into the allegations of fraud concerning the 2019 Financials.

72. As alleged, above, Defendants deliberately acted outside of the bounds of reason and/or were recklessly uniformed in performing their common law to Plaintiffs, and Defendants' actions therefore were undertaken in reckless disregard of Plaintiff's rights.

73. As a proximate result of Defendants' grossly negligent conduct, Plaintiff has been damaged in an amount to be proven at trial.

## JURY DEMAND

Plaintiff CCM Associates LLC hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CCM Associates II, LLC respectfully requests that this Court issue the following relief:

(a) That Plaintiff be awarded all actual, compensatory and consequential damages as permitted under Delaware law;

(b) Awarding punitive damages;

(c) Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

(d) Granting such other and further relief as the Court deems just and proper.

| OF COUNSEL: | FOX ROTHSCHILD LLP |
|---|---|
| | */s/ Kasey H. DeSantis* |
| Jordan B. Kaplan | Kasey H. DeSantis (No. 5882) |
| Kieran T. Ensor | Nathan D. Barillo (No. 5863) |
| **FOX ROTHSCHILD LLP** | 919 N. Market Street, Suite 300 |
| 49 Market Street | P.O. Box 2323 |
| Morristown, NJ 07960 | Wilmington, DE 19899-2323 |
| Tel: (973) 992-4800 | Tel.: (302) 654-7444 |
| | Fax: (302) 656-8920 |
| | kdesantis@foxrothschild.com |
| Date: August 25, 2023 | nbarillo@foxrothschild.com |
| | *Attorneys for Plaintiff* |